Case 8:26-ap-01038-SC   Doc 1   Filed 03/19/26   Entered 03/19/26 16:52:06   Desc
Main Document      Page 1 of 20

D. EDWARD HAYS, #162507
ehays@marshackhays.com
AARON E. DE LEEST, #216832
adeleest@marshackhays.com
CHAD V. HAES, #267221
chaes@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Richard A. Marshack,
Plaintiff and Trustee of the LPG Liquidation Trust

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>THE LITIGATION PRACTICE GROUP P.C.,<br><br>Debtor. | Case No.  8:23-bk-10571-SC<br><br>Chapter 11<br><br>Adv. No. |
| RICHARD A. MARSHACK, Trustee of the LPG Liquidation Trust,<br><br>Plaintiff,<br><br>v.<br><br>NAKED MEDIA L.L.C, a Florida limited liability company, and DOES 1 through 20, inclusive,<br><br>Defendant. | COMPLAINT FOR:<br><br>(1) AVOIDANCE, RECOVERY, AND PRESERVATION OF ACTUAL FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(A), 550, 551; CAL. CIV. CODE §§ 3439.04(a)(1) AND 3439.07]<br><br>(2) AVOIDANCE, RECOVERY, AND PRESERVATION OF CONSTRUCTIVE FRAUDULENT TRANSFERS [11 U.S.C. §§ 544, 548(a)(1)(B); 550, 551; CAL. CIV. CODE §§ 3439.04(a)(2), 3439.05, AND 3439.07]<br><br>(3) DISALLOWANCE OF CLAIMS HELD BY DEFENDANT [11 U.S.C. § 502(d)]<br><br>[STATUS CONFERENCE TO BE SET BY COURT] |

/ / /

1
COMPLAINT

4899-3592-6679,v.3

Richard A. Marshack, solely in his capacity as Trustee of the LPG Liquidation Trust, files this complaint against Naked Media L.L.C ("Defendant") and Does 1 through 20, inclusive, (collectively, "Doe Defendants"), and alleges as follows:

## Statement of the Case

1.      A bankruptcy trustee may avoid and recover actual and constructively fraudulent transfers made by a debtor. In this case, while insolvent, Debtor transferred at least $212,721.60 to Defendant within four years prior to bankruptcy (collectively, the "Transfers"). Trustee alleges that some or all of the Transfers were then subsequently transferred by Defendant to one or more of the Doe Defendants. Reasonably equivalent value was not provided the Debtor in exchange for the Transfers and, as evidenced below, the transfers were made with actual intent to hinder, delay, or defraud Debtor's creditors.

2.      Under these facts, the Trustee can avoid the Transfers and recover from Defendant as the "initial" transferee of such transfers and/or from Doe Defendants as "subsequent" transferees who did not take in good faith, for value, and without knowledge of the avoidability of such transfers. Plaintiff seeks to avoid, recover, and preserve such fraudulent transfers for the benefit of the Estate.

## Statement of Jurisdiction and Venue

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re The Litigation Practice Group, P.C.*, Bankruptcy Case Number 8:23-bk-10571-SC.

4.      Plaintiff has standing to bring this adversary proceeding pursuant to Provision V.E. of the Modified First Amended Joint Chapter 11 Plan of Liquidation, confirmed by the Court on September 9, 2024, as Dk. No. 1646. The Plan provides that the estate's litigation claims, including avoidance claims, were transferred to the LPG Liquidating Trust. Plaintiff brings these claims on behalf of the Trust.

5.      This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these

COMPLAINT

4899-3592-6679,v.3

claims. To the extent any claim for relief contained herein is determined not to be a non-core proceeding or a *Stern*-claim, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

6.      Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United State Code as provided in 28 U.S.C. §§ 1408 and 1409.

## Parties

7.      The Litigation Practice Group P.C. (previously defined as "Debtor") is a corporation organized under the laws of the State of California, that had its principal place of business in Tustin, California. During all relevant times prior to bankruptcy, Daniel S. March ("Mr. March") was the Chief Executive Officer of Debtor.

8.      On March 20, 2023 ("Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code, initiating bankruptcy Case No. 8:23-bk-10571-SC ("Bankruptcy Case") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

9.      Richard A. Marshack (previously defined as "Trustee" or "Plaintiff") was the duly-appointed, qualified, and acting Chapter 11 Trustee for the Debtor's bankruptcy estate ("Estate"). Pursuant to the confirmed Plan, the Trustee now serves as Trustee of the LPG Liquidation Trust, which now owns all of the litigation claims, including the Estate's avoidance actions.

10.     Plaintiff alleges that, at all relevant times, Defendant was a domestic corporation formed and existing under the laws of the State of Florida. Defendant's address and/or principal place of business is 6300 NW 5th Way, Ste. 100, Fort Lauderdale, FL 33309.

11.     Plaintiff is ignorant of the true names and capacities of the Doe Defendants and, therefore, sues said defendants under such fictitious names. Plaintiff will amend this Complaint to reflect the true names and capacities of such defendant(s) when they have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that each of the fictitiously named individuals and/or entities are responsible in some manner for the occurrences alleged herein and proximately caused Plaintiff's damages by their conduct. Plaintiff is informed and believes, and based thereon

COMPLAINT

alleges, that the fictitiously named defendants may constitute individuals, unknown trusts, partnerships, related entities, owners, principals, shareholders, insiders, alter egos, co-conspirators, and aiders and abettors that: (a) received transfers from Debtor as an initial, immediate, or mediate transferee; (b) received transfers from Defendant as a mediate transferee; (c) directed or controlled Defendant's conduct and, as such, were responsible in some manner for the occurrences alleged herein; and/or (c) were used to shield Debtor's assets from collection, levy or execution, and to otherwise, hinder, delay and defraud the Debtor and its creditors.

12.     With Trustee's appointment, he was granted standing to commence and maintain claims and causes of action on behalf of the Debtor's Estate, including but not limited to, claims under sections 541, 542, 544, 547, 548, 549, 550 and 551 of the Bankruptcy Code (collectively, "Recovery Claims").

**General Allegations**

**A.     The Bankruptcy Case**

13.     Pre-petition, Debtor was a law firm that provided consumer debt resolution services to more than 50,000 clients nationwide.

14.     Tony Diab ("Mr. Diab") operated, dominated, and controlled Debtor.

15.     On May 8, 2023, Trustee accepted his appointment as the Chapter 11 Trustee in the Bankruptcy Case. To the extent that Trustee was not appointed until after any of the events alleged in this Complaint, the allegations are based on information and belief. *See Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017); *Miller v. City of Los Angeles*, 2014 U.S. Dist. LEXIS 198871, at *5 (C.D. Cal. Aug. 7, 2014); *Mireskandari v. Daily Mail and General Trust PLC*, 2013 U.S. Dist. LEXIS 194437, at *4 (C.D. Cal. July 31, 2013).

**B.     Fraudulent Entities**

16.     The consumers that retained Debtor to represent them would pay over a period of time via monthly ACH debits from their bank accounts. These monthly payments were intended to cover all legal services provided by Debtor to those consumers. These funds should have been deposited into an attorney-client IOLTA account until earned. Instead, these funds were never deposited into trust and were diverted to one or more entities created by Mr. Diab ("Diab Entities")

COMPLAINT
4899-3592-6679,v.3

to receive Debtor's diverted property, other non-debtor entities, insiders, affiliates, marketing companies, co-conspirators, or otherwise spent on non-business, unnecessary, and lavish personal expenses which ultimately rendered the Debtor insolvent.

17.    While the Debtor may have performed legal work for some consumer clients that entitled it to payment, Debtor's Ponzi scheme, commingling of funds, and establishment of various Diab Entities, some with multiple bank accounts, rendered it impracticable for the Trustee to confirm what portion of ACH pulls became earned retainer funds.

18.    Mr. Diab has admitted, under penalty of perjury, that he operated the Debtor as a criminal enterprise, specifically, a Ponzi scheme. The Debtor's insolvency led to Mr. Diab and the Debtor improperly selling its stream of retainer payments, sometimes multiple times over, to "investors" in the scheme.

19.    After the Debtor's scheme began to crumble, as all Ponzi schemes inevitably must, and the Debtor's creditors began to demand payment from the Debtor, Mr. Diab concocted and enacted a plan to keep Debtor's interests in property outside the reach of creditors. Specifically, Mr. Diab created one or more Diab Entities to receive Debtor's diverted property.

20.    The Diab Entities include but are not limited to Vulcan Consulting Group LLC, Coast Processing LLC dba LPG, Oakstone Law Group PC, Greyson Law Center PC, Maverick Management Group, LLC, and Prime Logix, LLC. Several of the Diab Entities purported to operate as debt relief law firms.

21.    After the creation of the Diab Entities, many of Debtor's consumer clients were unlawfully "transferred" to one of the Diab Entities to receive legal services, which also led to related ACH receivables being improperly deposited into the accounts of such Diab Entities.

22.    As Mr. Diab would obtain loans to or investments in LPG, such funds would also be deposited in the various Diab Entity accounts. Loans owed by, and investments in the Debtor, were often paid from the funds held by the Diab Entities.

///

///

///

5

COMPLAINT

4899-3592-6679,v.3

23.     In sum, Mr. Diab used the bank accounts of the various Diab Entities to hold Debtor money derived from ACH pulls drawn from the accounts of Debtor's consumer clients, lenders who were told and who believed that they were lending to Debtor, and/or investors who were told and who believed that they were investing in Debtor.

24.     In the one-year prior to bankruptcy, Debtor's Statements of Financial Affairs confirm that Debtor collected revenues totaling approximately $155 million in ACH payments from its consumer clients.

25.     Under applicable state and federal laws, ACH pulls from a consumer's bank account cannot occur until the party initiating the payments obtains the consumer's express written consent.

26.     With respect to the ACH pulls, the consumer clients only consented to the Debtor initiating the payments from their accounts.

27.     With respect to the ACH pulls, the funds were derived from Debtor's consumer clients who never consented to any entity other than the Debtor representing them and from investors.

## C.     Ponzi Scheme

28.     Mr. Diab's operation of the Debtor as a Ponzi scheme manifested itself in several ways involving the Debtor's stream of ACH receivables from its consumer clients and the funds loaned to and invested in Debtor by third party lenders and investors.

29.     As noted above, Mr. Diab used the Diab Entities he controlled to keep millions of dollars of Debtor's money away from its creditors. The use of the Diab Entities also permitted him to operate, without oversight or detection, and to avoid payment disputes and complications.

30.     Third parties that believed they were loaning money to the Debtor and/or investing in in the Debtor and its streams of receivables were paid from the funds paid by the Debtor's consumer clients so that they would be unaware of the Debtor's insolvency and to perpetuate the Ponzi scheme. Many of these "lenders" actually served as "investors," hoping for very high returns before "the music stopped."

31.     The Debtor also paid certain outside attorneys for services rendered to old clients with the funds obtained from new clients, further perpetuating and facilitating the Ponzi scheme.

COMPLAINT

4899-3592-6679,v.3

32.     The Ponzi scheme also entailed the Debtor incurring debt and obligations that were virtually impossible to repay. Because the Debtor and its marketing affiliates received only incremental payments over time from Debtor's consumer clients, Debtor would sometimes purport to sell the future streams of payments made by its clients to raise additional cash. The same receivables were often-times bundled and sold multiple times over with no regard for the resulting repayment obligations incurred by the Debtor.

33.     The Debtor would also at times work with marketing affiliates who would convince consumer debtors to sign retainer agreements with the Debtor in exchange for the affiliates' receipt of a portion of the future stream of payments.

34.     The Debtor also obtained money from investors and merchant cash advance lenders at usurious rates and objectively unreasonable terms.

35.     The Debtor knew it did not have the ability to repay its various creditors and, thus, the actions taken by the Debtor constituted a Ponzi scheme orchestrated for improper personal gain.

36.     This Court has recognized that Debtor operated a Ponzi scheme by using funds provided by former investors to attract new investors hoping for very high returns. *See* Dk. No. 1545, fn. 5.

37.     On April 16, 2025, in a separate adversary proceeding by the Trustee against Mr. Diab, the Trustee filed a Motion for Order Approving Stipulation Between Trustee of the LPG Liquidation Trust and Tony Diab ("Trustee's Stipulation with Diab"). *See Marshack v. Diab et al*, Adv. Case No. 8:23-ap-01046-SC, as Adv1046 Dk. No. 761.[1]

38.     The Trustee's Stipulation with Diab includes a Declaration of Tony Diab attesting to certain facts. Adv1046 Dk. No. 761, Exhibit 1, Exhibit A.

39.     On May 29, the Court entered an order approving and adopting the Trustee's Stipulation with Diab ("Diab Stipulation Order"). Adv1046 Dk. No. 776.

40.     The Diab Stipulation Order provides that "Diab acknowledges and agrees that the Non-dischargeable Judgment [to be entered against him] is based upon his own fraud, breach of

---

[1] "Adv1046 Dk. No. ___" refers to docket entries in *Marshack v. Diab et al*, Adv. Case No. 8:23-ap-01046-SC.

7

COMPLAINT

4899-3592-6679,v.3

fiduciary duty, and willful and malicious injury to the Debtor including, but not limited to, Diab not requiring the Debtor to maintain client payments in trust, violating numerous federal and state consumer protection laws, and operating the Debtor as a Ponzi scheme." Adv1046 Dk. No. 776, ¶ 3.

41. The Ponzi Scheme Presumption establishes a debtor's "intent to defraud future undertakers [investors] from the mere fact that a debtor was running a Ponzi scheme." *Merrill v. Abbott* (*In re Independent Clearing House Co.*), 77 B.R. 843, 860 (D. Utah 1987). "Knowledge to a substantial certainty constitutes intent in the eyes of the law, cf. Restatement (Second) of Torts § 8A (1963 & 1964), and a debtor's knowledge that future investors will not be paid is sufficient to establish his actual intent to defraud them." *Id*. A trustee in bankruptcy is not required to show that an operator of a Ponzi scheme was subjectively aware his Ponzi scheme was destined to fail. *In re EPD Inv. Co., LLC*, 114 F.4th at 1153 (9th Cir. 2024).

42. "[I]f all the debtor receives in return for a transfer is the use of the defendant's money to run a Ponzi scheme, there is nothing in the bankruptcy estate for creditors to share." *In re Independent Clearing House Co.* 77 B.R. at 859. In such a situation, the use of the defendant's money cannot objectively be called "reasonably equivalent value." *Id*. Therefore, "[t]he trustee can avoid the transfers if they were preferential or fraudulent. Transfers to investors in a Ponzi scheme are preferential and fraudulent. Therefore, they constitute 'property of the estate,' and the trustee can recover them." *Id*. at 853 n.17 (citations omitted).

43. Based on the Ponzi Scheme presumption, the Court can presume that the Debtor had the actual intent to defraud investors within the meaning of 11 U.S.C. § 548(a)(1). Since the transfers by Debtor to third parties, including Defendant, were made with the intent to further the Ponzi scheme, the Debtor did not receive an objectively reasonable equivalent value for such transfers, and the Trustee can avoid any such transfers because they were preferential and/or fraudulent.

### D.    Prepetition Creditors and Lawsuits

44. Debtor's Schedule E/F, filed on April 4, 2023, as Dk. No. 33, lists: (a) 11 unsecured creditors with priority unsecured claims totaling $374,060.04; and (b) 58 nonpriority unsecured creditors with scheduled claims totaling $141,439,158.05.

/ / /

COMPLAINT
4899-3592-6679,v.3

45.     The claims register in this Bankruptcy Case includes 2,554 proofs of claim, totaling in excess of $424 million of claims asserted against the Estate.

46.     At least 14 UCC-1 statements were of record securing alleged debts of the Debtor as of the Petition Date. These statements either reflected secured liens against the Debtor's assets then owned or thereafter acquired or provided evidence of the assignment or sale of substantial portions of the Debtor's future income. They secured the repayment of the following claimed amounts that are currently known to Trustee and are allegedly owed by the Debtor: (a) $2,374,004.82 owed to Fundura Capital Group as evidenced by Proof of Claim No. 335 purportedly secured by a UCC statement filed on or about May 19, 2021; (b) approximately $15 million dollars owed to MNS Funding, LLC as evidenced by Proof of Claim No. 1060 purportedly secured by a UCC statement filed on or about May 28, 2021; (c) approximately $5,000,000 owed to Azzure Capital, LLC as evidenced by Proof of Claim No. 127 purportedly secured by a UCC statement filed on or about May 28, 2021; and (d) approximately $1.5 million dollars owed to Diverse Capital, LLC purportedly secured by UCC statements filed on or about September 15, 2021, and December 1, 2021.

47.     Debtor's balance sheets for the 36 months ending December 31, 2021, show approximately $17,900,000 in total assets at its highest point in November 2021. This amount is significantly less than the $424 million of claims filed.

48.     Debtor's Statement of Financial Affairs, filed on April 4, 2023, as Dk. No. 34, reflects 15 pending lawsuits against Debtor as of the Petition Date. The lawsuits date back to October 18, 2021 (*Fundura v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 613192-2021) and are as recent as March 10, 2023 (*Diverse Capital LLC v. The Litigation Practice Group P.C. et al.*, Supreme Court of New York Index No. 135614-2023).

## E.     Debtor's Insolvency

49.     Debtor was insolvent when the Transfers occurred as evidenced by: (a) the 14 UCC-1 statements reflecting secured liens against the Debtor's owned and after-acquired assets and the assignment or sale of substantial portions of the Debtor's future income; (b) the priority and non-priority unsecured debt of nearly $142 million listed in Debtor's schedules; (c) the $424 million of creditor claims filed in this Bankruptcy Case; and (d) Debtor's balance sheets reflecting, at its

9

COMPLAINT

highest point, $17.9 million of assets in November 2021.

50.    Moreover, insolvency is presumed as a matter of law where, as in this Bankruptcy Case, the debtor operated a Ponzi scheme. *See, e.g., Glob. Money Mgmt., L.P. v. McDonnold*, 2008 U.S. Dist. LEXIS 128733, at *15 (S.D. Cal. Feb. 27, 2008) (concluding that "if a Ponzi scheme is proven, then the debtor is proven insolvent from the time of its inception").

## F.    The Subject Transfers

51.    During the four-year period prior to the Petition Date, Debtor transferred cash to Defendant and/or the Doe Defendants. The full extent of the Transfers will be proven at trial, but are in an amount not less than $212,721.60 (previously defined as "Transfers") as set forth in the chart attached hereto as **Exhibit "1."**

52.    Each of the Transfers is a "transfer" of Debtor's interest in property as that term is defined in 11 U.S.C. § 101(54).

53.    Plaintiff alleges that Debtor was insolvent when the Diab Entities received the Debtor's property or became insolvent as a result of such diversion of assets.

54.    Plaintiff alleges that Debtor was insolvent when the Transfers occurred or became insolvent as a result of such transfers.

55.    Plaintiff alleges that Debtor did not receive reasonably equivalent value in exchange for or in connection with the Transfers.

56.    Pursuant to 11 U.S.C. § 550(a), Plaintiff is entitled to recover the Transfers or their value from Defendant and Doe Defendants as initial or subsequent transferees.

57.    Under 11 U.S.C. § 551, avoided transfers are automatically preserved for the benefit of the Estate.

## G.    Due Diligence

58.    On October 18, 2024, Plaintiff caused a letter to be mailed to Defendant ("First Letter") requesting documents and information to substantiate the Transfers, to assess the purpose of the Transfers, and to evaluate any potential defenses to Plaintiff's avoidance and recovery of the Transfers. Plaintiff received no response to the First Letter.

///

COMPLAINT
4899-3592-6679,v.3

59.    On November 15, 2024, Plaintiff caused a follow-up letter to be mailed to Defendant ("Second Letter") requesting the same documents and information sought in the First Letter. Plaintiff received no response to the Second Letter.

60.    On February 14, 2025, Plaintiff caused another follow-up letter to be mailed to Defendant ("Third Letter") requesting the same documents and information sought in the First Letter and the Second Letter. The Third Letter also attached a draft complaint that would be filed by Plaintiff against Defendant absent a response to the Third Letter from Defendant. On February 26, 2025, Plaintiff received an email response to the Third Letter.

61.    On or around March 17, 2025, Plaintiff and Defendant executed an agreement to toll and suspend any and all applicable statutes of limitations and statutes of periods of repose and laches for a period through and including March 20, 2026 ("Tolling Period"), unless otherwise agreed to in writing by Plaintiff and Defendant, for any and all Recovery Claims or other claims which Debtor, the Estate, the Trust, or Trustee may have against Defendant and any applicable third parties.

62.    During the Tolling Period, Plaintiff's counsel contacted Defendant, requesting documents and information to substantiate the Transfers ("Follow-Up Communication"). Plaintiff received no documents or information that, upon Plaintiff's review, substantiate the Transfers or demonstrate facts supporting any applicable defense to Defendant's receipt of Transfers.

63.    Prior to filing this Complaint, Plaintiff's counsel conducted an electronic search of Debtor's paper files and accounting records, including Debtor's QuickBooks files, which records and files are now stored electronically. Plaintiff's search of the subject records and files revealed no apparent defenses to the alleged claims.

## First Claim for Relief

## Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

## 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07

## (Against all Defendants)

64.    Plaintiff incorporates by reference Paragraphs 1 through 63 and realleges these paragraphs as though set forth in full.

11

COMPLAINT

4899-3592-6679,v.3

65. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code § 3439.04(a)(1).

66. The Transfers were of property of Debtor.

67. The Transfers were made within four years of the Petition Date.

68. The Transfers were made with the actual intent to hinder, delay, or defraud Debtor's creditors.

69. At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

70. Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

71. Debtor incurred substantial debt shortly before or shortly after some or all of the Transfers occurred.

72. Mr. Diab caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to Diab Entities.

73. Debtor actively concealed its beneficial interest in the Fraudulent Transfers and made the payments to Defendant with actual intent to hinder, delay, or defraud other creditors of the Debtor.

74. The various Diab Entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

75. Debtor received less than reasonably equivalent value in exchange for the Transfers. Defendant and/or Doe Defendants received at least $212,721.60 of property belonging to Debtor.

76. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

77. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

78. Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code § 3439.04(a)(1).

COMPLAINT

4899-3592-6679,v.3

79. Based on the foregoing, Plaintiff may recover and preserve the Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## Second Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 544, 550, 551; Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07

## (Against all Defendants)

80. Plaintiff hereby incorporates by reference Paragraphs 1 through 63 and realleges these paragraphs as though set forth in full herein.

81. Under 11 U.S.C. § 544(b)(1), Plaintiff may avoid transfers of an interest of Debtor which are voidable under applicable law by an unsecured creditor of Debtor, including under California Civil Code §§ 3439.04(a)(2) and 3439.05.

82. Debtor did not receive reasonably equivalent value in exchange for the Transfers.

83. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

84. At the time each Transfer was made, Debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of Debtor were unreasonably small in relation to the business or transaction.

85. At the time each Transfer was made, Debtor intended to incur, or believed or reasonably should have believed that Debtor would incur, debts beyond Debtor's ability to pay as they became due.

86. At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

87. The various Diab Entities, who benefitted from the receipt of funds improperly diverted away from Debtor, would be considered insiders under Cal. Civ. Code § 3439.04(b)(1).

88. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

13

COMPLAINT

4899-3592-6679,v.3

89.     Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

90.     Based on the foregoing, Plaintiff may avoid the Transfers pursuant to 11 U.S.C. § 544 and California Civil Code §§ 3439.04(a)(2) and 3439.05.

91.     Based on the foregoing, Plaintiff may recover and preserve the Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate pursuant to 11 U.S.C. §§ 550 and 551, and Cal. Civ. Code § 3439.07.

## Third Claim for Relief

## Avoidance, Preservation, and Recovery of Actual Fraudulent Transfer

## 11 U.S.C. §§ 548(a)(1)(A), 550 & 551

## (Against all Defendants)

92.     Plaintiff hereby incorporates by reference Paragraphs 1 through 63 and realleges these paragraphs as though set forth in full herein.

93.     One or more of the Transfers were made within two years of the Petition Date.

94.     The Transfers were made to Defendant with the actual intent to hinder, delay, or defraud Debtor's creditors.

95.     At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

96.     Debtor had been sued or threatened with suit before some or all of the Transfers occurred.

97.     Debtor incurred substantial debt shortly before or shortly after some or all of the Transfers occurred.

98.     Mr. Diab caused Debtor to abscond and delay the discovery of substantial assets of the Debtor pursuant to the diversion of Debtor's funds, client files, and assets to Diab Entities.

99.     Mr. Diab actively concealed Debtor's assets pursuant to the diversion of funds, client files, and assets to Diab Entities.

100.    The various Diab Entities, who benefitted from the receipt of funds improperly

14

COMPLAINT

4899-3592-6679,v.3

diverted away from Debtor, would be considered insiders as that term is defined in 11 U.S.C. § 101(31).

101. Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers totaling $212,721.60.

102. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

103. Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

104. Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C. § 548(a)(1)(A).

105. Based on the foregoing, Plaintiff may recover and preserve the avoided transfers up to the amount of the Fraudulent Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551..

## Fourth Claim for Relief

## Avoidance, Preservation, and Recovery of Constructive Fraudulent Transfer

## 11 U.S.C. §§ 548(a)(1)(B), 550 & 551

## (Against all Defendants)

106. Plaintiff hereby incorporates by reference Paragraphs 1 through 63 and realleges these paragraphs as though set forth in full herein.

107. One or more of the Transfers were made within two years before the Petition Date.

108. Debtor did not receive reasonably value in exchange for the Transfers.

109. The Transfers were made at a time when Debtor was insolvent and/or rendered insolvent by virtue of said transfers.

110. When the Transfers occurred, Debtor's business was undercapitalized and Debtor was engaged in business for which its capital was unreasonably small.

111. When the Transfers occurred, Debtor was about to incur debts that were beyond its ability to pay.

15

COMPLAINT

4899-3592-6679,v.3

112.    At the time each Transfer was made, Debtor was indebted to one or more creditors that held a claim against Debtor on the date of each Transfer and on the Petition Date.

113.    Plaintiff alleges that Defendant and/or Doe Defendants did not receive the Transfers in good faith, for value, and without knowledge of their avoidability.

114.    Based on the foregoing, Plaintiff may avoid the Transfers under 11 U.S.C. § 548(a)(1)(B).

115.    Based on the foregoing, Plaintiff may recover and preserve the avoided Transfers from Defendant and/or Doe Defendants as the initial transferee or, alternatively, as the subsequent transferee for the benefit of the Estate under 11 U.S.C. §§ 550 and 551.

**Fifth Claim for Relief**

**Disallowance of Claim**

**11 U.S.C. § 502(d)**

**(Against all Defendants)**

116.    Plaintiff hereby incorporates by reference Paragraphs 1 through 63 and realleges these paragraphs as though set forth in full herein.

117.    Plaintiff alleges that Defendant and/or Doe Defendants may have a claim against the Estate.

118.    Pursuant to 11 U.S.C. § 502(d), Plaintiff requests that any claim asserted by Defendant and/or Doe Defendants be disallowed unless or until the avoidable Transfers are repaid by Defendant and/or Doe Defendants.

**Prayer**

WHEREFORE, Plaintiff prays for judgment against Defendant and Doe Defendants as follows:

**On the First Claim for Relief**

1.    That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(1) and 3439.07;

2.    That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

16

4899-3592-6679,v.3

**On the Second Claim for Relief**

3.      That the Transfers be avoided under 11 U.S.C. § 544 and Cal. Civ. Code §§ 3439.04(a)(2), 3439.05 and 3439.07;

4.      That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Third Claim for Relief**

5.      That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(A);

6.      That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fourth Claim for Relief**

7.      That the Transfers be avoided under 11 U.S.C. § 548(a)(1)(B);

8.      That Plaintiff recover the avoided Transfers or a money judgment in an amount equal to the value of the avoided Transfers pursuant to 11 U.S.C. § 550;

**On the Fifth Claim for Relief**

9.      That any claim of Defendant and/or Doe Defendants against the Estate be disallowed in its entirety unless or until Defendant and/or Doe Defendants timely repay the avoidable Transfers;

**On All Claims for Relief**

10.      That Plaintiff only recover a single satisfaction of all avoided Transfers under 11 U.S.C. § 550(d);

11.      That all avoided Transfers be preserved pursuant to 11 U.S.C. § 551;

12.      For prejudgment interest under state law on all fraudulent transfer claims from the date each transfer was made, as set forth in *In re Slatkin*, 525 F.3d 805, 820 (9th Cir.2008), *In re Agricultural Research and Technology Group, Inc.*, 916 F.2d 528, 541-42 (9th Cir.1990), and *Field v. Kepoikai* (*In re Maui Indus. Loan & Fin. Co.*), 483 B.R. 346, 353 (Bankr. D. Haw. 2012);

13.      For pre-judgment interest on all other claims at the maximum rate allowed by law;

14.      For costs incurred by Plaintiff in prosecuting this action; and

/ / /

/ / /

17
COMPLAINT
4899-3592-6679,v.3

15.     For such other and further relief as the Court may deem just and proper.


DATED: March 19, 2026                    MARSHACK HAYS WOOD LLP


By: */s/ Chad V. Haes*
CHAD V. HAES
Attorneys for Richard A. Marshack,
Plaintiff and Trustee of The LPG Liquidation Trust

18

COMPLAINT

4899-3592-6679,v.3

**EXHIBIT 1**

In re: The Litigation Practice Group PC
Disbursement Details by Payee
4 Years Pre-Petition (03/20/2019 - 03/20/2023)

Naked Media LLC

 GROBSTEIN TEEPLE

| Bank Name | Account Name | Account Number | Cardholder Name | Cardholder Number | Statement Date | Transaction Date | Debit/Charge | Memo |
|---|---|---|---|---|---|---|---|---|
| Chase | The Litigation Practice Group PC | 3158 | | | 5/31/2022 | 5/17/2022 | 35,000.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Naked Media, LLC FT Lauderdale, FL 33309-5942 us Ref: Invoice 2861 Imad: 0517B1Qgc02C008035 Tm: 5641 900i37Jo |
| Chase | LPG; Alex Tarkoff | 0935 | ALEX TARKOFF | 1-7923 | 5/20/2022 | 5/17/2022 | 9,730.00 | IN *NAKED MEDIA LLC 888-5956546 FL P.O.S.: 14533 SALES TAX: 0.00 |
| Chase | The Litigation Practice Group PC | 3158 | | | 5/31/2022 | 5/23/2022 | 25,690.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Naked Media LLC FT Lauderdale, FL 33309 US Imad: O523B1QgcO7CO1 1360 Tm: 3851600143Jo |
| Chase | The Litigation Practice Group PC | 3158 | | | 6/30/2022 | 6/6/2022 | 35,000.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Naked Media LLC US Ref: Invoice # 2891 Imad: 0606B1Qgc08C027369 Tm: 4853200157Jo |
| Chase | The Litigation Practice Group PC | 3158 | | | 6/30/2022 | 6/10/2022 | 33,460.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Naked Media LLC us Ref: Invoice # 2895 Imad: 0610B1Qgc02C005705 Tm: 5723800161Jo |
| Chase | The Litigation Practice Group PC | 3158 | | | 6/30/2022 | 6/14/2022 | 10,500.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 NC: Naked Media LLC US Ref: Invoice 2896 Imad: 0614B1Qgc06C008760 Tm: 7523800165Jo |
| Chase | The Litigation Practice Group PC | 3158 | | | 6/30/2022 | 6/16/2022 | 42,000.00 | Fedwire Debit Via: Bk Amer Nyc/026009593 A/C: Naked Media LLC US Ref: Invoice 2897 Imad: O616B1QgcO8CO181 10 Tm: 3470700i67Jo |
| Chase | LPG VC; Alex Tarkoff | 6652 | LPG VC PAN | -4814 | 7/1/2022 | 7/1/2022 | 21,341.60 | IN *NAKED MEDIA LLC 888-5956546 FL P.O.S.: 14720 SALES TAX: 0.00 |
| | | | | | | | **212,721.60** | |

DRAFT FORM - SUBJECT TO CHANGE

Payor Accounts: BAT Inc., Coast Processing LLC,
EZ Debt Relief, Prime Logix, The Litigation
Practice Group, Vulcan Consulting Group LLC

EXHIBIT 1

PAGE 19